Matter of Fernandez v Gardner
2026 NY Slip Op 03718
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Jerry Fernandez, Petitioner,
v
Colleen C. Gardner, as Executive Deputy Comptroller, Respondent.

Decided and Entered:June 11, 2026
CV-25-0857
Calendar Date: May 27, 2026
Before: Aarons, J.P., Pritzker, Ceresia, Fisher And Mcshan, JJ.

John F. Clennan, Ronkonkoma, for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondent.

[*1]
Ceresia, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Comptroller that petitioner was not a participant in the World Trade Center rescue, recovery or cleanup operations.
In 2017, petitioner, a police officer, filed a World Trade Center (hereinafter WTC) Notice with the New York State and Local Retirement System, claiming that he was assigned and worked at the WTC site on September 12, 2001. Petitioner subsequently applied for the WTC accidental disability presumption pursuant to Retirement and Social Security Law § 363 (g) (1) (a), citing several debilitating conditions related to his WTC assignment, including skin cancer and posttraumatic stress disorder. The Retirement System ultimately rejected petitioner's WTC notice for lack of proof that he had participated in the WTC rescue, recovery or cleanup operations, and petitioner requested a hearing. At the conclusion of the hearing, the Hearing Officer upheld the rejection of petitioner's WTC notice and concluded that petitioner was not entitled to the WTC accidental disability presumption, and the Comptroller adopted that decision. This CPLR article 78 proceeding ensued.
"[I]f any condition or impairment of health is caused by a qualifying [WTC] condition . . . , it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such [Retirement System] member's own willful negligence, unless the contrary be proved by competent evidence" (Retirement and Social Security Law § 363 [g] [1] [a]). As relevant here, a qualifying WTC condition is defined as "a qualifying condition or impairment of health resulting in disability to a [Retirement System] member who participated in [WTC] rescue, recovery or cleanup operations for a qualifying period," provided that the member has submitted "a written and sworn statement . . . that has duly validated the member's identity, indicating the underlying dates and locations of employment" (Retirement and Social Security Law § 2 [36] [a]).
According to the notice submitted by petitioner to the Retirement System in satisfaction of Retirement and Social Security Law § 2 (36) (a) and his hearing testimony, he and his supervising sergeant were assigned to travel to the WTC site on September 12, 2001 and they left their station at 8:30 a.m. Petitioner testified that they brought water and snacks that they dropped off at a New York City Police Department precinct near the WTC site, and then the pair proceeded to the WTC site. Petitioner further testified that they did not report to any authorities upon their arrival at the WTC site, stating that there was no command center and "no representation from the city down there at all that we could find." According to petitioner, the pair then walked through the rubble pile, moving debris and looking and listening for signs of survivors[*2]. The pair did not locate any victims and they left the WTC site "close to midday," returned to their station house and signed out for the day between 1:00 p.m. and 1:30 p.m. Petitioner also presented a page from the Centre Island police blotter from September 12, 2001 that included an entry at 8:30 a.m. that petitioner and his sergeant were "on duty to NYC." The blotter included a further entry made at 8:00 p.m. that same day indicating that the pair were off duty at 1:30 p.m. Petitioner testified that it was his sergeant who made the blotter entries and that he was unable to explain how the sergeant made the 8:00 p.m. entry when he went off duty at 1:30 p.m.
Petitioner also presented the testimony of an officer with the New York Police Department with whom petitioner had worked several years ago. According to the witness, he ran into petitioner at the WTC site on September 12, 2001, when they were working as part of a "bucket brigade" clearing debris. The witness testified that he spoke with petitioner for 15 to 30 minutes at the site before parting ways. The witness also testified, however, that he believed that he ran into petitioner sometime at "6 o'clock at night or in the afternoon." When petitioner was asked during his testimony whether he had any involvement with other law enforcement agencies or rescue personnel that day, he testified that he observed New York Fire and Police Department personnel at the site but that "nobody was really saying too much" and [w]e would nod to each other" as they passed by, without referencing meeting his former coworker. Petitioner also failed to mention working on a bucket brigade that day. Petitioner further testified that he was not scheduled to work on September 11, 2001 and September 12, 2001, and that he was called in on September 11 to work at his local station house shortly after the attack and that he worked until 9:00 p.m. He admitted, however, that he was never paid for working on September 11 or 12 and, although he stated that he was not serving as a volunteer those days, he never followed up with his employer seeking payment or inquiring as to why he was not paid.
The Retirement System presented the testimony of its Director of the Disability Services Bureau and letters it received regarding petitioner's employment on September 12, 2001. The witness testified that, upon receiving petitioner's WTC notice, the first thing the System did was contact petitioner's employer to confirm his participation in the WTC rescue, recovery or cleanup operations, requesting the dates petitioner worked in the WTC operations, the number of hours worked and the specific locations where he participated. Initially, the Retirement System received a letter from the Centre Island Village Clerk dated November 15, 2017, indicating that the only information regarding petitioner's activities on September 12, 2001 was the blotter entry that he was "on duty to NYC," and attached to the letter was an email from the Chief of [*3]the Centre Island Police Department referencing the same blotter entry. Based upon this limited information, the Retirement System rejected petitioner's WTC notice. However, on May 8, 2018, the Village Clerk sent a letter confirming that petitioner provided support to the WTC rescue and recovery operations at "[G]round [Z]ero in lower Manhattan" on September 12, 2001 from 9:00 a.m. to 1:30 p.m., and, as a result, the Retirement System approved petitioner's WTC notice. In a subsequent January 7, 2019 letter, the Chief of Police informed the Retirement System that, after consulting with the Village Clerk, it was mutually agreed that the May 2018 letter confirming petitioner's participation was written in error, as the only documentation in support of his participation was the blotter entry and that there was no documentation as to where petitioner went or what he did that day. In a follow-up letter after petitioner applied for the WTC presumption, the Chief reiterated that he could not confirm that petitioner was present at the WTC site on September 12, 2001, and he further stated that he had contacted the individual who served as Chief of Police at the time of the WTC attacks, who told him that, to his knowledge, petitioner was not at the WTC site on that date or at any other time. The Hearing Officer and, ultimately, the Comptroller credited the information in the letters written by the Chief of Police over the testimony of petitioner and his witness, and found that the vague entry in the blotter, standing alone, did not support a finding that petitioner participated in the WTC rescue, recovery or cleanup operations.FN1 Deferring to the Comptroller's credibility determinations (see Matter of Croly v New York State Comptroller, 236 AD3d 1277, 1278-1279 [3d Dept 2025]) and given the lack of any other evidence that petitioner was present at the WTC site on September 12, 2001, substantial evidence supports the determination that petitioner did not sufficiently establish that he participated in the WTC rescue, recovery or cleanup operations and, therefore, he was not entitled to the WTC accidental disability presumption (see Retirement and Social Security Law §§ 2 [36] [a]; 363 [g] [1] [a]; Matter of DiMartini v Sewell, 233 AD3d 435, 435 [1st Dept 2024]).
Aarons, J.P., Pritzker, Fisher and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1
Contrary to petitioner's contention, we do not find that the Hearing Officer applied an incorrect legal standard in rendering his decision.